U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

DEC 1 1 2017

TONY R. MOORE, CLERK
BY: _____
   DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| ALAN THOMPSON | CIVIL ACTION NO. 2:15-01426 |
| VERSUS | JUDGE JAMES T. TRIMBLE, JR. |
| NACCO MATERIALS HANDLING GROUP, INC, ET AL | MAG. JUDGE KAY |

## MEMORANDUM RULING

Before the court is a "Re-Urged Motion for Summary Judgment on Behalf of Stewart & Stevenson, LLC and Its Wholly-Owned Subsidiary, Stewart & Stevenson Material Handling, LLC on Liability" (R. #40) wherein these Defendants (hereinafter referred to as "Stewart & Stevenson") move the court for summary judgment in their favor pursuant to Rule 56 of the Federal Rules of Civil Procedure. Stewart & Stevenson maintains that they (1) were not the manufacturer of the equipment involved in Plaintiff's accident (Hyster Model 360 Material Handler hereinafter referred to as the "Hyster 360"), (2) did not lease the Hyster 360, and/or (3) did not perform any service or maintenance on the Hyster 360 after it was shipped to Bechtel Corporation on October 30, 2013. Thus, they cannot be held liable under the Louisiana Products Liability Act or tort law.

## FACTUAL STATEMENT

This lawsuit involves an incident wherein Plaintiff, Alan Thompson, sustained injuries when the above-mentioned Hyster ran over him. Hyster[1] sold the Hyster 360 to Stewart & Stevenson, an authorized dealer, who in turn sold the Hyster 360 to Bechtel Corporation to be

---

[1] NAACO Materials Handling Group, Inc. acted as the operating company for Hyster-Yale Materials Handling, Inc. in the design engineering, manufacturing, and/or sale of Hyster brand material handling equipment in the United States. Complaint, ¶. III. R. #1-1.

1

utilized at the Chenier Energy job site.[2] Stewart & Stevenson proposed the sale of the Hyster 360 to Bechtel Corporation; the Hyster 360 was to be equipped with a "self-adjusting" backup alarm having a specified range of audible sound of 82-102 decibels.[3] Bechtel Corporation issued a purchase order to purchase four (4) of the Hyster 360s.[4]

Prior to its delivery, an employee with Stewart & Stevenson completed a Pre-Delivery checklist for the Hyster 360. Mr. Thompson disputes whether Stewart & Stevenson inspected the performance range functioning of the audible backup alarm.

Stewart & Stevenson shipped the Hyster 360 to Bechtel Corporation on October 30, 2013. Other than adding a fire extinguisher, Stewart & Stevenson did not perform any service or maintenance on the Hyster 360. Stewart & Stevenson asserts that it had no knowledge of the working conditions at the Cheniere Energy facility, whereas, Mr. Thompson asserts that Stewart & Stevenson had a general knowledge of the enormity of the project and the likely number of pieces of industrial equipment in use.

The Rule 30(B)(6) representative for Stewart & Stevenson, Karl Sims, testified that an employee of Stewart & Stevenson performed a check of the backup alarm system to the extent of verifying a sound was emitted.[5] However, as noted by Plaintiff, the service checklists do not include any reference to a back-up alarm, and Mr. Thompson disputes that the check was performed, noting that the service checklist does not include the backup alarm. Herman J. Klaus, Director of Application Solutions for Hyster's Big Trucks Division, testified that it does not require

---

[2] Id. ¶ IV.
[3] Plaintiff's exhibit B, p. 3.
[4] Defendant's exhibit 3.
[5] Defendant's exhibit 9 and 12.

2

its distributors to test performance parameters or criteria of backup alarms.[6] Hyster only expects its distributor to verify that the back-up alarm is installed and functional. There is no dispute that Hyster was obligated to deliver to Stewart & Stevenson the Hyster 360 with an installed back-up alarm.

Upon delivery, Juan Castillo, a Bechtel Mechanic, inspected the Hyster 360 and the back-up alarm. However, he only checked to determine if it emitted a sound in a closed, quiet shop; he did not test the decibel sound parameters.[7] Bobby Sherman, who operated the Hyster 360, was supposed to check its functionality on a daily basis, but there are no records to support the pre-operational checks. Even if there were, the reports would not determine if the 82-102 decibel sound parameters were met.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[8] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[9] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[10] As to issues which the non-moving party has

---

[6] Defendant's exhibit 13, Herman Klaus depo. p. 45.
[7] Plaintiff's exhibit I, Juan Castillo depo. pp. 19-21 and 44-48.
[8] Fed. R. Civ. P. 56(c).
[9] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).
[10] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

3

the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[11] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[12] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[13] There is no genuine issue of material fact if, viewing the evidence in the light more favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[14] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.[15] The court will construe all evidence in the light most favorable to the nonmoving party, but will not infer the existence of evidence not presented.[16]

## **LAW AND ANALYSIS**

Stewart & Stevenson urges the court to dismiss it from this lawsuit because it was neither the manufacturer, nor the lessor of the equipment. Stewart & Stevenson argues that no claim can be brought against it under the Louisiana Products Liability Act which provides exclusive theories of liability for manufacturers only. Plaintiff maintains that Stewart & Stevenson was the "seller" and "provider" of a defective piece of equipment. Stewart & Stevenson also maintain

---

[11] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).
[12] Anderson, 477 U.S. at 249.
[13] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
[14] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
[15] Anderson, 477 U.S. at 249-50.
[16] Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

that it cannot be held liable in tort because it did not know or have reason to know that the backup alarm was defective.

The Investment Proposal submitted by Stewart & Stevenson highlights that the Hyster 360 is equipped with an "AUDIBLE ALARM: - Reverse Direction Activated 82-102 dB(A) – Self Adjusting" meaning that the alarm changes with intensity to account for other noise in the work area. In other words, the alarm is supposed to increase in intensity as other noise in the area increases in order to remain an effective warning device. Plaintiff asserts that Stewart & Stevenson warranted that the backup alarm they chose to supply would have a sound intensity level of between 82 and 102 decibels.

Post-accident testing by G. Fred Liebkemann, IV revealed that:

> the placement of the alarm within the housing structure instead of externally was easily determinable; That based upon his investigation of the manufacturer's installation instructions, the backup alarm in question was intended for external use without any sound obstructions like that associated with the actual installation within the Hyster unit; That the sound levels he demonstrated were easily determinable through the use of a sound meter.[17]

Mr. Liebkemann IV's examination and testing of the backup alarm revealed that the cause of the muted sound was the location of the alarm – inside the rear lighting housing instead of outside – which was mandated by the alarm manufacturer, ECCO. According to Mr. Liebkemann, IV, the shielded location significantly curtailed the alarm's effectiveness.[18]

---

[17] Plaintiff's exhibit E, Liebkemann affidavit.
[18] Id.

Mr. Liebkemann asserts that industry standards require that backup alarms meet certain minimum safety criteria in terms of decibel levels.[19] Mr. Thompson complains that Stewart & Stevenson failed to test the backup alarm properly because it only tested as to whether or not the alarm emitted a sound, and the testing was performed in a shop without any background noise and without testing the minimum and maximum decibels.

Plaintiff asserts that Stewart & Stevenson is a sophisticated seller and manufacturer of industrial equipment that should know of the hazards of a muted alarm and should have known that the sound level was deficient. The manufacturer of the backup alarm mandated that it be installed in a "mounting location at the rear of the vehicle that will provide protection from flying objects, debris, and foul weather conditions while allowing unobstructed sound projection from the vehicle.[20] Allegedly, the backup alarm was not installed properly, thus Mr. Thompson argues that had Stewart & Stevenson properly inspected the Hyster 360, it would have determined that it had been installed improperly.

Stewart & Stevenson asserts that Plaintiff's only theory of recovery against it, a non-manufacturer seller, is under Louisiana tort law which provides that a non-manufacturer seller of a product is not liable in tort for damages absent a showing that it knew or should have known that the product was defective and failed to declare it. Stewart & Stevenson maintains that there is no dispute that Stewart & Stevenson was not the manufacturer of the Hyster 360; instead, it was the seller as defined in the Louisiana Products Liability Act (LPLA). Thus, "any responsibility for tort damages it [Stewart & Stevenson] may have would necessarily arise under its role as a

---

[19] Id.
[20] Id.

6

non-manufacturer seller.[21] Louisiana law requires proof of the following elements to establish liability: (1) the product sold by the retailer must be defective; (2) the retailer must have constructive knowledge that the product it sold was defective; and (3) the retailer must have failed to declare the defect.[22]

In order to hold Stewart & Stevenson liable, the court must determine if Stewart & Stevenson had knowledge or constructive knowledge of the alleged defect with the backup alarm. In Jackson v. Sears Authorized Retail Dealers Store,[23] Sears assembled and placed a chair manufactured by another company, on display. The chair tipped over, injuring plaintiff. Sears presented expert testimony which concluded that the chair had a design defect and that there was no incorrect assembly. The Second Circuit affirmed the dismissal of Sears stating as follows:

> Of course, the law is clear that a non-manufacturing seller of a defective product is not responsible for damages in tort absent a showing that he knew or should have known the product was defective and failed to declare it (citation omitted) and the cases cited therein. Nor is a non-manufacturing seller required to inspect the product prior to sale to determine the possibility of inherent vices or defects.
>
> Under these legal standards, it is obvious that, as a matter of law, Sears, a non-manufacturer seller, had no duty to inspect or test the product for the type of inherent design vices or defects alleged in this case. The imposition of such a duty would effectively make the non-manufacturing seller a guarantor against defects over which it had no control or responsibility. The light of reason illuminates the unduly onerous burden such a duty would inflict upon retailers.[24]

---

[21] Ayala v. Enerco Group, Inc., 569 Fed. Appx. 241 (2014).
[22] Id. at 245.
[23] 821 So.2d 590 (La.App.2d Cir. 6/12/2002).
[24] Jackson, 821 So.2d at 593.

Under Louisiana tort law, Stewart & Stevenson can only be held responsible for damages in tort if Stewart & Stevenson knew or should have known that the product sold was defective and failed to declare it. Stewart & Stevenson submits as summary judgment evidence the deposition testimony of Herman J. Klaus, Director of Application Solutions for Hyster's Big Trucks Division. Mr. Klaus testified that Stewart & Stevenson was only to inspect to make sure there was a reverse alarm and that it was functional.[25] Mr. Klaus further testified that Hyster did not expect Stewart & Stevenson to check the parameters of the alarm in terms of volume, nor was it responsible for the installation of the back-up alarm.[26]

Stewart & Stevenson also submits as summary judgment evidence the Pre-Delivery Inspection checklist[27] to suggest that Stewart & Stevenson inspected the back-up alarm. Plaintiff attempts to create a genuine issue of material fact for trial due to the fact that the checklist does not mention the back-up alarm. Plaintiff argues that because the back-up alarm is not on the checklist, then Stewart & Stevenson failed to properly inspect it.

Stewart & Stevenson submits the affidavit of Karl Sims wherein he stated that on October 30, 2013, that Stewart & Stevenson performed a Pre-Delivery Inspection Quality Control and a Salesman Pre-Delivery checklist finding that the Hyster 360 back-up alarm was working properly.[28] The Salesman Pre-delivery Check List does not specify that the back-up alarm was operational, however, it does indicate that the unit is exactly as the customer ordered.[29]

---

[25] Defendant's exhibit 13, Depo. of Herman Klaus, p. 21.
[26] Id. pp. 21 and 45.
[27] Defendant's exhibit 6.
[28] Defendant's exhibit 6, 7, and 9.
[29] Defendant's exhibit 7.

8

Also submitted, is the deposition testimony of Juan Castillo, a Bechtel employee who performed the inbound inspection on the Hyster 360 upon its arrival at the Bechtel plant and who approved the back-up alarm as satisfactory. Mr. Castillo testified as to the steps he took to inspect the back-up alarm which included engaging the emergency brake and putting the Hyster 360 in reverse. He then stepped outside of the Hyster 360 and listened while the machine was running to determine if it was loud enough. Mr. Castillo checked that the back-up alarm was "Satisfactory."[30] The Hyster 360 was in Bechtel's possession from November 30, 2013 until the date of the accident, March 28, 2014.[31]

Bobby Sherman, another Bechtel employee who actually operated the Hyster 360, testified that prior to operating the Hyster 360, he performed a daily checklist and safety inspection.[32] One of the items on the checklist is the back-up alarm and horn which Mr. Sherman indicated on the checklist on the date of the accident as operational.[33] To support its position that the Hyster 360 was inspected daily, Stewart & Stevenson attaches a checklist completed by Mr. Sherman dated March 24, 2014 through March 30, 2014 which includes the backup alarm and horn.[34]

Plaintiff submits the proposal of Stewart & Stevenson wherein the dealer recommended the "advanced audible back-up alarm". As noted by Plaintiff, the alarm was supposed to increase in intensity as other noise in the area increased. Plaintiff suggests that Stewart & Stevenson warranted that the backup alarm would have a sound intensity level of between 82 and 102

---

[30] Defendant's exhibit 14, Castillo dep. pp. 19-21 and Inbound Inspection.
[31] Id. p. 18.
[32] Defendant's exhibit 15, Depo. of Bobby Sherman, pp. 24-25.
[33] Id. pp. 25-26.
[34] Id. Sherman depo. attached as exhibit 2.

9

decibels. Plaintiff relies on the Investment Proposal [35] which listed the Audible Alarm with a "Reverse Direction Activated 82-102dB(A) – Self Adjusting" as a warranty being made by Stewart & Stevenson. Plaintiff then states that post-accident testing by Plaintiff revealed that the alarm was significantly less intense than the warranted range.[36] Mr. Kiebkemann, who inspected and tested the alarm post-accident, opined that installing the alarm in an enclosed cavity compromised the effectiveness of the safety device and that a properly placed alarm would have provided a timely warning to Mr. Thompson of the vehicle's approach.[37] Also, in the report, Mr. Kiebkemann notes that Mr. Thompson reported that the volume level of the Hyster backup was significantly less than that of other similar equipment used at the plant, and that complaints from riggers concerning the audibility of the backup alarms on the Hyster forklifts were reported to management prior to this incident.[38]

Plaintiff complains of the method of testing performed by Stewart & Stevenson; the Hyster 360 was tested in a shop and only as to whether it emitted a sound instead of testing the minimum and maximum decibel operational parameters noting that industry standards require that backup alarms meet certain minimum safety criteria in terms of decibel levels.[39] Plaintiff argues that if proper testing had been performed by Stewart & Stevenson, the enclosed alarm would have failed to meet the specifications promised.

Plaintiff argues that Stewart & Stevenson is a sophisticated seller and manufacturer of industrial equipment and should have known of the hazards of a muted alarm. Plaintiff asserts

---

[35] Plaintiff's exhibit B.
[36] Plaintiff's exhibit E.
[37] Id. p. 5., R. #42-5.
[38] Id. p. 4.
[39] Plaintiff's exhibit E.

that Stewart & Stevenson should have known after a proper inspection that the backup alarm had been installed improperly.

Plaintiff attempts to distinguish this case with the finding in Haley[40] as follows: Stewart & Stevenson (1) could tell by a simple operational test whether the backup alarm was properly mounted as customary and as recommended by the alarm's actual manufacturer, (2) could tell whether the alarm was hidden within the housing, (3) could tell from a simple sound meter whether the sound output met industry-mandated standards or their performance criteria, and (4) could tell even without a sound meter if the alarm was self-adjusting. Plaintiff argues that disassembly was not necessary as in Haley.

Plaintiff also points out that Stewart & Stevenson was aware that the Hyster 360 was slated for use in the multi-billion dollar LNG distribution plant being built and that dozens, if not hundreds of loud industrial pieces of equipment would be used in that work environment in which warning sounds were a critical safety feature. In other words, it had industry knowledge of the effect that multiple pieces of industrial equipment have in a work environment.

First, the court finds that Stewart & Stevenson cannot be held liable as a manufacturer. Stewart & Stevenson's act of selling and delivering the Hyster 360 with certain recommendations as to accessories does not elevate this distributor from a non-manufacturing seller to a manufacturer. In this case, Hyster installed the back-up alarm, not Stewart & Stevenson. Thus,

---

[40] In Haley v. Wellington Specialty Ins. Co., 4 So.3d 307 (La.App. 2 Cir. 02/25/09), the appellate court affirmed the dismissal of the defendant by the trial court which found that plaintiff failed to meet her burden of proving that the defendant knew or should have known that the sign was defective because the defect was hidden and discoverable.

Stewart & Stevenson did not exercise the level of control over or the design, installation, construction or quality of the alarm that is necessary to elevate it to a manufacturer.

Next, the court must determine if Stewart & Stevenson can be held liable in tort. A non-manufacturing-seller of a defective product is not responsible for damages in tort absent a showing that he knew or should have known the product was defective and failed to declare it. Nor is a non-manufacturing seller required to inspect the product prior to sale to determine the possibility of inherent vices or defects. This court will not impose upon a non-manufacturing seller such an onerous duty that would effectively make it a guarantor against defects over which it had no control or responsibility.

The crux of Plaintiff's argument to cast liability upon Stewart & Stevenson is claimed responsibility of the seller to inspect the unit so rigorously that it would include a test of the decibel levels and whether the alarm took into account ambient noise. The Plaintiff points to no requirement placed upon the seller in this case to make any such detailed inspection. Unrefuted testimony in the case is that the manufacturer required its retailer to only determine that there was an alarm installed. It is uncontested that the seller ordered a forklift with a backup alarm capable of emitting 82 to 102 decibels. There is no evidence that such an alarm would have been inadequate.

Plaintiff's counsel attempts to make much of the fact that the checklist provided by the seller does not reflect that the unit was checked to ascertain that a backup alarm was in fact installed, the only obligation placed upon Stewart & Stevenson by Hyster. That is obviously a non-issue. Unrefuted testimony by Karl Sims establishes that he checked the presence of the alarm

system and the fact that it functioned. Moreover, Bechtel's mechanic inspected the unit upon delivery and found it to be present and working. The Hyster 360 operator, Mr. Sherman, testified unequivocally that he checked the backup alarm daily before the work day began. To argue that there was no alarm system that emitted an alarm would be nonsensical. No evidence and no law pertaining to this case establishes or even suggests that Stewart & Stevenson had a higher duty of inspection of the alarm system than that which the seller performed. Plaintiff has presented no evidence to suggest that Stewart & Stevenson knew or should have known that the backup alarm was defective and therefore the seller in this case is entitled to summary judgment in its favor.

## CONCLUSION

For the reasons set forth above, the court finds that Defendant, Stewart & Stevenson, is not a manufacturer as defined by the Louisiana Products Liability Act, nor can it be held liable in tort. Accordingly, the motion for summary judgment filed by Stewart & Stevenson will be granted dismissing these Defendants with prejudice.

The Court determines that there is no just reason for delay and will direct entry of final judgment under rule 54(b) of the Federal Rules of Civil Procedure.

**THUS DONE AND SIGNED** in Alexandria, Louisiana on this 11th day of December, 2017.

_____
JAMES T. TRIMBLE, JR.
**UNITED STATES DISTRICT COURT**