UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| ALAN THOMPSON | * | CIVIL ACTION NO. 2:15cv1426 |
| | * | |
| VERSUS | * | |
| | * | JUDGE TRIMBLE |
| NACCO MATERIAL HANDLING, | * | |
| GROUP, INC., HYSTER-YALE | * | |
| MATERIALS HANDLING, INC. and | * | MAGISTRATE JUDGE KAY |
| STEWART & STEVENSON, LLC and | * | |
| its wholly-owned subsidiary, STEWART | * | |
| & STEVENSON MATERIAL | * | |
| HANDLING, LLC | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR NEW TRIAL,
OR IN THE ALTERNATIVE, FOR RECONSIDERATION TO ALTER
OR AMEND JUDGMENT, R. DOC. 71**

MAY IT PLEASE THE COURT:

Plaintiff hereby requests that the Court reconsider its ruling of 11 December 2017,

granting a full summary judgment to Defendant, Stewart & Stevenson, LLC, for the following

reasons:

1.  The Court failed to consider critical evidence in the record which is pertinent to

    the issues raised by Defendant in its motion for summary judgment.

2.  The Court reached conclusion concerning questions of fact that are material to

    the issues at hand, and which questions are legitimately disputed.

3.     The Court failed to interpret the evidence in the light most favorable to the non-moving party, i.e., the Plaintiff, and had that been done, material issues of fact would have been paramount.

## TABLE OF CONTENTS

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Memorandum in Support of Motion for New Trial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page**

*Accord, Lirette v. State Farm Ins. Co.,*
    581 So. 2d 265(La. Ct. App. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Adams v. Owens-Corning Fiberglas Corp.,*
    2004-1589 ( La. App. 1 Cir 9/23/05), 923 So. 2d 118. . . . . . . . . . . . . . . . . . . . . . . . 4

*Alexander v. Toyota Motor Sales, U.S.A.,*
    123 So. 3d 712; No. 13-0756 (La. 09/27/13). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Ayala v. Enerco Group, Inc.,*
    No. 13-30532, 569 Fed. Appx. 241 (5th Cir. 05/28/2014). . . . . . . . . . . . . . . . . . . 4

*Bradford v. Louisiana Downs, Inc.,*
    606 So.2d 1370 (La.App. 2 Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Brown v. Johnson & Johnson, Inc.,*
    No. 15-2308; 2015 WL 6128706 (E.D.La. 10/16/2015). . . . . . . . . . . . . . . . . . . . . . 4

*Chappuis v. Sears Roebuck & Co.,*
    358 So. 2d 926 (La. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Gammill v. Invacare Corp.,*
    08-0833 (La. App. 4 Cir. 12/17/08), 2 So.3d 557. . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Haley v. Wellington Specialty Ins. Co.,*
    44014 ( La. App. 2 Cir 02/25/09), 4 So. 3d 307. . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Jackson v. Sears Authorized Retail Dealers Store,*
    821 So.2d 590 (La. App. 2nd Cir. 6/12/2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lirette v. State Farm Ins. Co.,*
    581 So. 2d 265(La. Ct. App. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Lowery v. TJX Cos.*,
    No. 16-14182; 2017 WL 3868952 (E.D.La. 09/05/2017).. . . . . . . . . . . . . . . . . . . 4

*Martco Ltd P'Ship v. Wellons, Inc.*, No. 04-673
    2008 WL 394221 (W.D. La. 2/12/2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Meaux v. Wendy' International, Inc.*, No. 10-CA-111,
    51 So.3d 778 (La. App. 5th Cir. 10/26/2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Murray v. Ramada Inns, Inc.*, 521 So.2d 1123 (La. 1988). . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 17

*NUSSLI US, LLC v. NOLA Motorsports Host Comm., Inc.*,
    No. 15-2167, No. 15-2372 (E.D.La 11/3/2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Perfect Equipment Corp. v. Louisiana Recycling, Inc.*,
    655 So.2d 698 (La.App. 2 Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Reaux v. Deep South Equipment Co.*,
    02-1571 (La. App. 4 Cir. 2/5/03), 840 So.2d 20. . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La.7/5/94), 639 So.2d 730. . . . . . . . . . . 17

**Statutes**                                                                                    **Page**

FRCP 59(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

La. Civ. Code art 2315. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

La. Civ. Code art. 2475. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

La. Civ. Code art. 2489. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## Overview

Plaintiff realizes that it is a difficult task to convince a sitting Court to review an earlier ruling, and much more onerous to convince that Court to reverse its prior decision.  However, because of the complexities of the facts concerning the sale and resale of the product in question, as well as the approaching trial date, and the potential for piecemeal litigation if an appeal of the Final Judgment of 11 December 2017 is necessary, Plaintiff feels compelled to make just such a suggestion.

> District courts have considerable discretion in deciding a motion under *Fed. R. Civ. P. 59(e)*. A motion for amendment of judgment maybe granted on the basis that such amendment is necessary to correct manifest errors of law or fact upon which the judgment is based. Such motion may be granted in order that newly discovered or available evidence may be considered. A court may also grant a motion under Rule 59(e)to prevent a manifest injustice or to accommodate an intervening change in controlling law.

*Martco Ltd P'Ship v. Wellons, Inc.*, No. 04-673, 2008 U.S. Dist. LEXIS 10295; 2008 WL 394221 (W.D. La. 2/12/2008).

> Courts . . . have generally considered four factors in deciding motions for reconsideration under the Rule 59(e) standard:
> (1)    the motion is necessary to correct a manifest error of law or fact upon which the judgment is based;
> (2)    the movant presents newly discovered or previously unavailable evidence;
> (3)    the motion is necessary in order to prevent manifest injustice; or
> (4)    the motion is justified by an intervening change in controlling law.

-1-

*NUSSLI US, LLC v. NOLA Motorsports Host Comm., Inc.*, No. 15-2167, No. 15-2372 (E.D.La 11/3/2016) at p. 19.

This motion considers elements (1) and (3)[1].

1. *The Court failed to consider critical factual evidence in the record which is pertinent to the issues raised by Stewart & Stevenson in its motion for summary judgment.*

As the Supreme Court opined in *Murray v. Ramada Inns, Inc.*, 521 So.2d 1123 (La. 1988),

> [I]n any case where the defendant would otherwise be liable to the plaintiff under a negligence or strict liability theory, the fact that the plaintiff may have been aware of the risk created by defendant's conduct should not operate as a total bar to recovery.  Instead, comparative fault principles should apply, and the victim's "awareness of the danger" is among the factors to be considered in assessing percentages of fault.

*Id.* at p. 1134.

This Court's Memorandum Ruling, **R.Doc. 70**, appeared to mix notions that the actions of the Plaintiff's co-workers or his employer somehow negated analysis of duty/risk of Stewart & Stevenson as mandated by the Louisiana Supreme Court.  That is, whether the co-workers or the employer were negligent or comparatively negligent to any, or even a great, degree is irrelevant to the initial assessment of whether Stewart & Stevenson owed a duty to the Plaintiff.

---

[1] Since the motions were argued, the deposition of Ashley Chaloupka has been taken, but is not yet transcribed.  While generally supporting the statements she made in her affidavit in the record, the transcript is somewhat more illustrative of the mechanism of injury.

As the Supreme Court in *Murray* noted, that divorcing of concepts is equally applicable to claims under negligence and strict liability.  *Id.*

The Court is absolutely correct that Stewart & Stevenson, LLC is not a "manufacturer" under the Louisiana Product Liability Act.  In fact, the Plaintiff conceded that point in his opposition memorandum.  Instead, Stewart & Stevenson is the "seller" of a defective product. Since it is not a manufacturer, the concepts of the Louisiana Product Liability Act are irrelevant to the consideration of any issues of this claim.  Rather, the question of liability arises under Article 2315 which simply provides that "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

The Court is also correct in its recitation of the Louisiana Supreme Court's statements concerning the elements of proving a claim against a non-manufacturing "seller" of a defective product.

> A non-manufacturer/seller in some instances has a duty to warn a purchaser of defects and/or dangerous propensities in the products he sells. In the case of a defective product, i.e., one which is unreasonably dangerous in normal use, the non-manufacturer/seller can be held liable for damages in tort only if he knew or should have known that the product was defective and failed to declare the defect to the purchaser. . .However, a non-manufacturer seller is not required to inspect the product prior to sale to determine the possibility of inherent vices or defects. . .Under some circumstances, a non-manufacturer vendor who holds the product out to the public as its own may be classified as a "professional vendor" and may have the same responsibility as a manufacturer. Chappuis v. Sears Roebuck & Co., 358 So. 2d 926, 930 (La. 1978).

*Adams v. Owens-Corning Fiberglas Corp.*, 2004-1589 ( La. App. 1 Cir 9/23/05), 923 So. 2d 118, 123 (citations omitted).  *Accord*, *Lirette v. State Farm Ins. Co.*, 581 So. 2d 265(La. Ct. App. 1991).

> Insofar as Lakeside Toyota is not the manufacturer of the 1995 Corolla, any responsibility for tort damages it may have would necessarily arise under its role as a non-manufacturing seller. To find liability in this context, three requirements must be met: *First*, the product sold by Lakeside Toyota must be defective. *Second*, Lakeside Toyota must have had actual or constructive knowledge that the product it sold was defective. *Lastly*, Lakeside Toyota must have failed to declare the defect. *Reaux v. Deep South Equipment Co., 02-1571, pp. 5-6 (La. App. 4 Cir. 2/5/03), 840 So.2d 20, 23-24.*  Further, because Lakeside Toyota did not sell the vehicle directly to the plaintiff, it must be demonstrated that the plaintiff falls within the ambit of those persons to whom the seller owes a duty. *Gammill v. Invacare Corp.*, 08-0833 (La. App. 4 Cir. 12/17/08), 2 So.3d 557, 559.

*Alexander v. Toyota Motor Sales, U.S.A.*, 123 So. 3d 712, 714; No. 13-0756 (La. 09/27/13)(emphasis added).  *Accord*, *Ayala v. Enerco Group, Inc.*, No. 13-30532, 569 Fed. Appx. 241 (5th Cir. 05/28/2014); *Brown v. Johnson & Johnson, Inc.*, No. 15-2308; 2015 WL 6128706 (E.D.La. 10/16/2015); *Lowery v. TJX Cos.*, No. 16-14182; 2017 WL 3868952 (E.D.La. 09/05/2017).

That simple recitation, however, requires close analysis since it is not a "get out of jail" card that automatically relieves a seller of any responsibility.  Instead, it involves a determination of factual issues that, under these circumstances, make summary judgment inapposite.

For instance, it was not Bechtel who proposed or even requested a self-adjusting backup alarm with a specific decibel range.  It was not Hyster who mandated that backup alarm. Instead, it was Stewart & Stevenson who, based upon their expertise in the industry and knowledge of the enormity of the $20 billion Cheniere LNG facility, recommended to Bechtel that such a safety device was necessary.  *They promised to deliver that product to their customer and did*

-4-

*not. They promised that the final product would have certain operational parameters and it did not.*  To find otherwise would create a factual determination that is inappropriate for summary judgment.

This matter is not simply an issue of an independent sale of a standardized product that does not function properly.  The nature of this proposal and sale are quite different from the circumstances in *Jackson v. Sears Authorized Retail Dealers Store*, 821 So.2d 590 (La. App. 2nd Cir. 6/12/2002), or even *Haley v. Wellington Specialty Ins. Co.*, 4 So.3d 307 (La. App. 2nd Cir. 02/25/09).  Instead of a standard product, this was a specialized product proposed by Stewart & Stevenson for a special need, and which did not live up to the promised standards.

The Court made the critical error of equating (1) the expectations of Hyster relative to inspection under their dealership agreement with (2) the duty Stewart & Stevenson owed to its customer under the sales agreement. *See*, **R.Doc. 70** at p. 8.  Those two analyses are clearly distinguishable and neither is controlling on the other.  It was plain error to hold that by meeting the Hyster minimal dealership "inspection, Stewart & Stevenson also met its obligation to Bechtel to provide the precise product it had recommended.

The Court further relied on the Pre-Delivery Check to reach the conclusion that the "unit is exactly as the customer ordered." **R.Doc. 70** at p.8.  That factual conclusion flies in the face of the documented evidence that the backup alarm does not produce the warning sound levels promised.

-5-

With all due respect, the Louisiana obligations articles control this issue.  Specifically, Louisiana Civil Code Articles 2475 and 2489 provide, as follows:

> The seller is bound to deliver the thing sold and to warrant to the buyer ownership and peaceful possession of, and the absence of hidden defects in, the thing.  The seller also warrants that the thing sold is fit for its intended use.
>
>        *                    *                    *
>
> The seller must deliver the thing sold in the condition that, at the time of the sale, the parties expected, or should have expected, the thing to be in at the time of delivery, according to its nature.

Stewart & Stevenson proposed a specialized audible backup alarm as a key part of the sale.  *See*, Ex."**B**" to Opposition Memorandum, **R.Doc. 42-2**.  The backup alarm chosen by Stewart & Stevenson was not a simple alarm, but an alarm that changes in intensity to account for other noise in the work area.  That is, the alarm is supposed to increase in intensity as other noise in the area increases in order to remain an effective warning device, not drowned out by other sounds.  While the Court noted this distinction, the Court failed to observe that Stewart & Stevenson had warranted that the backup alarm they chose would provide a sound intensity level of between 82 and 102 decibels.  Post-accident testing by the Plaintiff revealed that the alarm was significantly less intense than the warranted range.  *See*, Ex. "**E**" to Opposite Memorandum, **R.Doc. 42-5**.  The failure to provide the specified product raises myriad questions of fact concerning whether Stewart & Stevenson met its obligation to Bechtel.

The cause of the muted sound was the location of the backup alarm *inside the rear lighting housing instead of outside* as required by the alarm manufacturer, ECCO.  In that shielded location, the effectiveness of the alarm was significantly curtailed.  *Id.*

Stewart & Stevenson contend that the backup alarm was tested by them and found to be proper.  Instead, as the Court correctly noted, they simply parked the unit in their shop and put it in reverse.  It emitted *a sound*, so that passed their "test" that the backup alarm was operational, but failed to prove that the unit had the minimum and maximum decibel operational parameters they guaranteed to Bechtel.

Because industry standards require backup alarms to meet minimum safety criteria in terms of decibel levels, *see*, Liebkemann Affidavit, Ex. "**E**", **R.Doc. 42-5**, this particular audible alarm proposed was supposed to have a range of between 82 and 102 decibels. [2] However, there is no evidence that Stewart & Stevenson, or anyone else for that matter, actually tested the backup alarm *as installed in an inside hidden compartment* for compliance with those industry standards.    Stewart & Stevenson admitted that they also install backup alarms on material handlers.  They know the hazard of a muted alarm.  If they did in fact "check" the backup alarm,

---

[2]     As Exhibit "**E**", **R.Doc. 42-5**, indicates, measuring the decibel levels nearly adjacent to the equipment showed reduced sound levels of 64 to 90 decibels.  Basic physics explains that each 10 decibel change has a doubling in the intensity of the sound, which means that this reduction in sound intensity is quite significant.  That is, the "minimum" sound level of the backup alarm proposed was supposed to be four (4) times as loud as measured by plaintiff's expert [82-64 = 18 decibel reduction].

then as an expert in the field of material handlers, they are presumed to know that the equipment was deficient and are presumed to know that the sound level was deficient.   It is no excuse to claim that others listened as well and did nothing; that is an issue of comparative fault and not an issue of duty/risk.

ECCO, who manufactured the backup alarm sold by Stewart & Stevenson to Bechtel Corporation mandated that it be installed in a "mounting location at the rear of the vehicle that will provide protection from flying objects, debris, and foul weather conditions *while allowing unobstructed sound projection from the vehicle*."  This requirement was properly noted by the Court, but the significance of that fact was not.  That is, had Stewart & Stevenson performed a proper inspection of the Hyster, or tested the functionality of that alarm, it would have determined the installation error of placing the backup alarm inside an internal compartment instead of exposed as typical.

While the Court cited various provisions of the Rule (30(B)(6) deposition of Stewart & Stevenson, **R.Doc. 42-7**, for support of adequate "testing", the pertinent issues were apparently overlooked:

a.      Stewart & Stevenson has the obligation to assure that the equipment *functions properly* before delivery.  Pages 10-11.  Simply hearing a sound is not a determination of functional performance, much less proper functional performance.

b.      Bechtel is a long time customer of Stewart & Stevenson.  Pages 14-15.

-8-

c.      Bechtel did not provide any specifications to Stewart & Stevenson for the equipment; instead, Stewart & Stevenson made the recommendation for the components.  Page 15.

d.      Under the sale to Bechtel, Stewart & Stevenson agreed to provide a material handler with a self-adjusting backup alarm having a minimum decibel level of 82 and a maximum of 102.  Pages 16-17.

e.      Stewart & Stevenson installs options like backup alarms on Hyster equipment.  Page 21.

f.      Stewart & Stevenson has installed backup alarms on Hyster equipment before.  Page 22.

g.      The pre-delivery check has instructions for the preparatory work that includes "*verify specifications*."  Pages 26-27.  Stewart & Stevenson did not so verify.

        9      Q.    So what specifications did Stewart & Stevenson

        10   have to verify with respect to the back-up alarm?

        11      A.    That it was present.

        12      Q.    Was there any testing to see that it was a

        13   self-adjusting back-up alarm?

        14      A.    No.

Additionally, while the Court noted in the Factual Statement section that there was some complaint about low volume level of the Hyster backup alarms, the Court apparently discounted that information relative to the factual question of whether the backup alarm was functional as promised by Stewart & Stevenson.  Specifically, Thompson and other workers made complaints

-9-

about the low level of sound emitted from the backup alarm of the Hyster material handlers. *See*, **R.Doc. 42-6**, pp. 129-132.  There was much other noise from other equipment at the time of the injury.  Pages 133-134, and other manufacturer material handlers had backup alarms that were much louder than the Hyster alarms.  Pages 256-257.

If this information was discernible by the Plaintiff, then certainly that same information was discernible to an expert like Stewart & Stevenson, had they bothered to appropriately check.

This testimony raises significant questions of material fact concerning the nature and extent of the functionality pre-delivery check by Stewart & Stevenson.

The pivotal issue concerns what Stewart & Stevenson knew or should have known about the defective backup alarm, *as installed*.  Those factual issues are sufficient to defeat summary judgment. Whether Bechtel inspected the material handler when it was delivered and gave it a "Satisfactory" grade, does not relieve Stewart & Stevenson from its legal responsibility to provide a piece of equipment meeting the performance criteria guaranteed.  Such an analysis is not determinative for several reasons.  First, the check by Bechtel was performed in an enclosed shop away from operational noise in the work areas.  Second, the check was simply to determine if some sound was emitted and not to determine if the alarm was self-adjusting.  Third, the check was not made to determine whether the backup alarm met the performance criteria of 82-102 decibels.  *See*, Deposition of Juan Castillo, Ex. "**I**" to Opposition Memorandum, **R.Doc. 42-9** at pp. 44-48.  Mr. Castillo believed that the backup alarm was located in an unobstructed area

-10-

like most Hyster material handlers and was surprised to see the photographic evidence that the backup alarm is actually hidden behind a rear lighting panel. *Id.*

On the other hand, Stewart & Stevenson as a sophisticated seller of industrial equipment, and as an installer of backup alarms in general, knew or should have known that the backup alarm they promised was improperly installed and partially muted as a result thereof.

The Court's refusal to "impose upon a non-manufacturing seller such an onerous duty" of determining if its guaranteed warning parameters for the backup alarm were met, **R.Doc. 70** at p. 12, completely ignores the voluntarily assumed obligation of Stewart & Stevenson to provide that specific mode of device.

## ASSUMED OBLIGATIONS

Stewart & Stevenson was aware that the material handler was slated for use in the multi-billion dollar LNG distribution plant being built by Cheniere at Sabine Pass and the fact that dozens, if not hundreds, of loud industrial pieces of equipment would be used in that work environment in which warning sounds were a critical safety feature. With this knowledge, they made their expert recommendation to Bechtel for a Hyster 360 material handler with a self-adjusting backup alarm.  Instead of delivering that equipment, Stewart & Stevenson provided a material handler with a hidden and muted backup alarm - essentially the equivalent of a non-functional alarm for the work environment in question. *See*, Thompson deposition at pp. 129-134, Ex. "**F**", to Opposition Memorandum, **R.Doc. 42-6**.

Because Stewart & Stevenson is a seller of a sophisticated piece of equipment with specialized specifications, this independent basis of liability is distinct from any liability as a non-manufacturing seller.  It arises from the assumed obligation of Stewart & Stevenson to Bechtel and its employees who would be adversely affected by a breach of that obligation.  Alan Thompson was a third-party beneficiary of that assumed obligation created when Stewart & Stevenson promised the Hyster Model 360 for the work site in question.  It was legal error for the Court to overlook this separate assumed obligation of Stewart & Stevenson.

2.      *The Court reached conclusions concerning questions of fact that are material to the issues at hand and which questions are legitimately disputed and reserved for the jury.*

"A fact is material if its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery.  *Bradford v. Louisiana Downs, Inc.*, 606 So.2d 1370, 1373 (La.App. 2 Cir. 1992).  Facts are "material" if they potentially insure or preclude recovery, affect the litigants' ultimate success or determine the outcome of a legal dispute.  *See also*, *Perfect Equipment Corp. v. Louisiana Recycling, Inc.*, 655 So.2d 698,700 (La.App. 2 Cir. 1995)["Any doubt as to whether a fact is material is to be resolved in favor of the non-moving party."].

a.      Whether Stewart & Stevenson properly examined, tested, or even listened to the audible backup alarm during its quality control inspection.  The Court's factual determination

-12-

that listening to a sound was sufficient because that is all that Hyster required ignores the realities of (a) their promise to Bechtel, (b) their internal standards to test functionality, and (c) their background in installing backup alarms.

b.     Whether Stewart & Stevenson was aware of the working environment at the Cheniere Energy LNG Liquification project for which they made an Investment Proposal recommendation to Bechtel Corporation to employ 4 Hyster Model 360 material handlers with backup alarms hidden in the housing structure.  While the Court noted this in passing, the evidence produced by the Plaintiff shows that in operation, the Hyster backup alarm was essentially useless.

c.     Whether Stewart & Stevenson was aware or should have been aware that the hidden location of the backup alarm they recommended to Bechtel Corporation rendered the backup alarm ineffective.  As an installer of backup alarms, they are presumed to know that such devices are only effective is the sound can actually be directed to where it is needed.

d.     Whether housing the backup alarm inside the Hyster compartment rendered the audible range of the audible alarm less than required by industry standards.   The only information available to the Court is the testimony of the Plaintiff and the testimony and affidavit of Plaintiff's expert concerning his testing of the sound levels.

-13-

e.  Whether housing the backup alarm inside the Hyster compartment defeated the intended purpose of the audible alarm as recommended by the alarm's manufacturer.  *See*, Exhibit "**E**" to Opposition Memorandum, **R.Doc. 42-5**.  If Stewart & Stevenson, as an expert in backup alarm devices, knew or should have known that the backup alarm was hidden within an internal housing structure, they should have had the knowledge that such an installation defeated the very purpose of the device.

f.  Whether Stewart & Stevenson assumed the obligation of providing a material handler to Bechtel Corporation that would meet the work environment needs of the Cheniere Energy LNG facility.  This assumed obligation was paramount in the sales proposal that Stewart & Stevenson made to Bechtel.

g.  Whether employees of Bechtel Corporation, like Alan Thompson, who were intended to be in the vicinity of the Hyster Model 360 material handlers, are considered third-party beneficiaries of any assumed obligations of Stewart & Stevenson to provide equipment to Bechtel Corporation that met the specific decibel range for the backup alarm.

h.  Whether Stewart & Stevenson, as an expert in industrial equipment and an installer of backup alarms, was aware or should have been aware that the audible backup alarm was improperly installed by Hyster.  Clearly, if Stewart & Stevenson did any testing of the backup alarm in its enclosed facility, they would have known that the muted sound was coming from inside the Hyster unit.

-14-

i.  Whether Stewart & Stevenson, given its expertise in the industry, knew or should have known that the placement of the audible backup alarm would defeat its intended safety effectiveness and potentially endanger workers in the vicinity of the equipment.

j.  At page 12 of the Memorandum Ruling, R.Doc. 70, the Court states that "The Plaintiff points to no requirement placed upon the seller in this case to make any such detailed inspection." Yet, Stewart & Stevenson imposed that requirement on itself when it agreed to provide a product of safety performance characteristics. Further, its own internal standards call for a verification of specification. Once such "specification" was a backup alarm with an audible range of 82-102 dB.

k.  The Court further erred the ultimate issue of whether the backup alarm was defective. The only evidence in the record is that the backup alarm did not meet industry standards because it was muted in its hidden location. No one has opined that a properly mounted, properly functioning backup alarm with operating parameters of 82-102 dB would have been deficient as the Court suggests at p. 12. Rather, that is what was promised by Stewart & Stevenson, and that is what was purchased by Bechtel. Unfortunately, that is not what was provided and that deficiency should have been discovered by Stewart & Stevenson.

-15-

3.      *The Court failed to interpret the evidence in the light most favorable to the non-moving party, i.e., the Plaintiff, and had that been done, material issues of fact would have been paramount.*

While the Court stated at page 4 of the Memorandum Ruling that "The court will construe all evidence in the light most favorable to the nonmoving party, but will not infer the existence of evidence not presented," there were a number of instances in which that benefit of the doubt was not granted.

a.      The Court did not consider the motives of Bechtel employees to claim that they had performed pre-work inspections.

b.      The Court did not consider the motive of Hyster in claiming that Stewart & Stevenson only needed to hear a sound to meet the functionality testing, when the dealership agreement contains various provisions for indemnification and hold harmless between the parties.  While Hyster is required to indemnify Stewart & Stevenson for product defects, if by helping Stewart & Stevenson by dis-proving any independent fault of the seller, Hyster has effectively lessened its liability exposure.

c.      At page 13 of the Memorandum Ruling, the Court suggests that the totality of the evidence does not "suggest that Stewart & Stevenson knew or should have known that the backup alarm was defective."  However, when all of the foregoing is viewed most favorably in favor of the Plaintiff, it is apparent that Stewart & Stevenson promised to

-16-

provide a specific product with specific safety characteristics; that Stewart & Stevenson agreed to verify the functionality of the product [which includes the safety appliances]; that Stewart & Stevenson is knowledgeable about installation of backup alarms; that Stewart & Stevenson is knowledgeable about Hyster products; that Stewart & Stevenson installs backup alarms on material handlers, including Hyster units; and that because of these elements, was couched with the obligation to assure to its customer that the product they sold had functional safety devices.

## CONCLUSION

The Court erred in making factual determinations beyond what summary judgment procedures necessitate:

> A genuine issue is a "triable issue." *Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751.* . . "In determining whether an issue is 'genuine,' courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence." *Smith, 93-2512 at 27; 639 So.2d at 751.*

*Meaux v. Wendy' International, Inc.*, No. 10-CA-111, 51 So.3d 778, 783 (La. App. 5th Cir. 10/26/2010).

Based upon the foregoing conclusions of law, and manifest errors of fact, the Plaintiff prays that the Court review the information previously provided and noted herein as part of the earlier production, consider that information in light of the Louisiana Supreme Court's guidance in *Murray*, and grant a new trial on the motion for summary judgment.

-17-

Respectfully Submitted:

MICHAEL J. MESTAYER, A Professional
   Law Corporation
1100 Poydras Street
Suite 2785
New Orleans, LA  70163
Telephone:  504-522-7360
Facsimile: 504-522-7356

*s/Michael J. Mestayer*
MICHAEL J. MESTAYER (LA Bar No. 09461)
E-Mail: mmestayer@mestayerlegal.com

- and -

CREED & CREED
1805 Tower Drive (71201)
P.O. Drawer 14136
Monroe, LA 71207
Telephone: 318-362-0086
Facsimile: 318-362-8219

*s/Christian C. Creed*
CHRISTIAN C. CREED (LA Bar No. 23701)
E-Mail: christian@creedlaw.com

Attorneys for Plaintiff, ALAN THOMPSON

## CERTIFICATE OF SERVICE

     I hereby certify that on this the 20th day of December, 2017, a true and exact copy of the foregoing pleading was forwarded to counsel of record in this proceeding via electronic transmission.

*s/Michael J. Mestayer*
MICHAEL J. MESTAYER

-18-