RECEIVED
DEC 2 0 2017
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

ALAN THOMPSON                               CIVIL ACTION NO. 2:15-01426

VERSUS                                      JUDGE JAMES T. TRIMBLE, JR.

NACCO MATERIALS HANDLING GROUP, INC., ET AL    MAG. JUDGE KAY

## MEMORANDUM RULING

Before the court is a motion for summary judgment (R. #51) filed by Hyster-Yale Group, Inc.[1] and Hyster-Yale Material Handling, Inc. (collectively referred to as "Hyster") wherein these Defendants seek to be dismissed from the instant lawsuit. These Defendants assert that Plaintiff cannot meet his burden of proof under the Louisiana Products Liability Act.

### STATEMENT OF FACTS

Plaintiff, Alan Thompson, filed the instant lawsuit claiming injuries he sustained when he was struck by a Hyster 360 forklift allegedly manufactured and sold by Defendants, Hyster-Yale Group Inc. and Hyster-Yale Material Handling, Inc. Plaintiff alleges that the backup alarm on the Hyster was not functioning properly when he was injured.

At the time of the incident which occurred on March 28, 2015, Mr. Thompson was employed by Bechtel Corporation and working at the Sabine Pass Chenier LNG Facility; Plaintiff was working in Laydown area 14 with Michael Moore, Joseph Guidry and Bobby Sherman. Kevin Stratton, the driver of an eighteen-wheeler load of steel product, positioned at the rear of the

---

[1] Formerly known as NACCO Material Handling Group, Inc.

1

Hyster, was also in the area.[2] Mr. Thompson gave Bobby Sherman, the operator of the Hyster 360, instructions to line up with another forklift being operated by Mr. Guidry. Mr. Sherman and Mr. Guidry were performing a tandem lift to move large pieces of steel from the eighteen-wheeler. Mr. Thompson instructed Mr. Sherman to move forward and shift the Hyster 360 to line up in a certain direction.

The parties dispute whether or not the Hyster 360 was moving forward or in reverse at the time of the accident. There is no dispute that Plaintiff was not facing the Hyster 360 when he was initially struck and run over. Mr. Stratton, Mr. Sherman and Mr. Guidry testified that the Hyster 360 was moving forward when it struck Mr. Thompson. The issue as to whether or not the Hyster 360 was moving forward or in reverse is significant as to Defendants, Hyster, because Plaintiff alleges that the audible reverse alarm was defective which caused Plaintiff's injury. If the Hyster 360 was moving forward when Plaintiff was struck, the alarm would not have been activated. Thus, Plaintiff would not be able to prove that the characteristics of the backup alarm were a proximate cause of the accident.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[3] A fact is

---
[2] Plaintiff and Defendants dispute the exact location of the eighteen-wheeler and the position of the Hyster 360 at the time of the incident.
[3] Fed. R. Civ. P. 56(c).

2

"material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[4] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[5] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[6] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[7] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[8] There is no genuine issue of material fact if, viewing the evidence in the light more favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[9] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.[10] The court will construe all evidence in the light most favorable to the nonmoving party, but will not infer the existence of evidence not presented.[11]

## **LAW AND ANALYSIS**

The Louisiana Products Liability Act requires a plaintiff to prove that an injury directly results from an unreasonably dangerous design. Hyster maintains that Plaintiff's injury could not

---

[4] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).
[5] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).
[6] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).
[7] Anderson, 477 U.S. at 249.
[8] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
[9] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
[10] Anderson, 477 U.S. at 249-50.
[11] Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

3

have resulted from a defect related to the backup alarm if the Hyster was not backing up when the accident occurred. Hyster asserts that Plaintiff has nothing more than *ipse dixit* to support his claim which is insufficient to create a genuine issue of material fact. Hyster remarks that every witness to the relevant incident testified that the Hyster was traveling forward when the accident occurred, and that Plaintiff was injured when he placed himself in the tail-swing of the forward-moving Hyster.

Hyster asserts that Plaintiff's claim fails because (1) Plaintiff lacks any evidence that the "unreasonably dangerous" condition he has alleged under the LPLA is related to his accident since the backup alarm is only relevant if the Hyster was traveling in reverse at the time of the accident; (2) Plaintiff's expert wholly ignored material facts and thus rendered an unsupported and inadmissible opinion; (3) Plaintiff's expert has failed to identify a specific alternative design that would have prevented or reduced the injury to Plaintiff; (4) Plaintiff's proffered alternative design that would have prevented the accident is irrelevant since the Hyster was not traveling in reverse and therefore neither the backup alarm nor a camera would have been engaged; (5) Plaintiff did not weigh the risk and utility of the product as required in proving a design defect; (6) the location of the backup alarm did not deviate from design specifications; (7) Plaintiff fails to identify a specific warning that was inadequate or caused his injuries; and (8) Plaintiff fails to identify any express warranty that was allegedly breached by the Hyster-Yale Defendants.

*Causation*

Hyster maintains that Plaintiff cannot prove causation in fact and that the alleged design defect was the most probable cause of the injury.[12] Hyster argues that Plaintiff lacks direct evidence to prove the Hyster was traveling in reverse, and simply relies on his own self-serving testimony which lacks any factual support. Hyster informs the court that the three witnesses to the incident—Bobby Sherman (the operator of the Hyster at the time of the incident), Joseph Guidry (the other forklift operator) and Kevin Stratton (the eighteen-wheeler driver)—all testified that the Hyster was traveling forward when it struck Plaintiff.[13]

Plaintiff testified he was not looking at the Hyster, but instead he had his back to it as he was looking at Michael Moore and Mr. Stratton who were both in front of Plaintiff.[14] Hyster challenges Plaintiff's claim that the Hyster 360 was moving in reverse when it hit him, given that he had his back to the Hyster and did not see it moving before the accident. Hyster argues that Plaintiff lacks any factual evidence to support his position that the alleged design defect proximately caused his injury.

Hyster further challenges Plaintiff's expert opinion that the Hyster was traveling in reverse; Hyster contends that the expert lacks the proper factual foundation for his opinions. Hyster complains that the expert, G. Fred Liebkemann IV, relies solely on Plaintiff's version of the event to support his opinions and completely disregards the three eyewitnesses' testimony who

---

[12] See McDaniel v. Terex USA, L.L.C., 466 Fed. Appx. 365 374 (5th Cir. 2012)(citing Wheat v. Pfizer, Inc., 31 F.3d 340, 342 (5th Cir. 1994)).
[13] Defendant's exhibit 6, Bobby Sherman depo. p. 45; Defendant's exhibit 7, Joseph Guidry depo. pp. 24,25, 27, and 28, with attached exhibit 3; Defendant's exhibit 8, pp. 46-48, 60-61.
[14] Defendant's exhibit 4, Alan Thompson depo. pp. 145-146 and 148-149.

5

actually observed the accident.[15] Hyster argues that because Mr. Liebkemann failed to base his opinion on facts or data in the case, his opinions are inadmissible.[16]

Plaintiff relies on Mr. Liebkemann's expert opinion which indicates that the area of risk or the distance Plaintiff had to be standing away from the Hyster and be struck was from 14" to 2'2".[17] There is no dispute that after Plaintiff was struck in the right shoulder, his leg was run over by the Hyster's tire. Mr. Sherman testified that Plaintiff had walked a minimum of 10 feet away from the forklift.[18] Mr. Guidry testified that Plaintiff had walked 8 to 10 feet from the Hyster 360.[19]

Plaintiff then argues that the rear swing of the Hyster cannot physically contact someone standing behind it unless it is moving in reverse, thus according to plaintiff and simple science, the Hyster had to have been traveling in reverse at the moment of initial impact. Plaintiff also submits the affidavit of Ashleigh Chaloupka[20] who was in the area and saw Plaintiff face down **behind** the Hyster. Plaintiff argues that physics shows that Plaintiff was behind the Hyster and not alongside it, thus indicating that the Hyster must have been moving in reverse as opposed to moving forward.

Plaintiffs submits as summary judgment evidence engineering drawings[21] which indicate that for an 18" turning radius, the area of risk alongside the rear tire is 2'2"; at a 50" turning

---

[15] Both Sherman and Guidry were deposed prior to Mr. Liebkemann authoring his report and Stratton was deposed after Mr. Liebkemann authored his report.
[16] Federal Rule of Evidence 703.
[17] Plaintiff's exhibit E, engineering drawings of G. Fred Liebkemann.
[18] Defendant's exhibit 6, Sherman depo. p. 45.
[19] Plaintiff's exhibit G, Guidry depo. p. 25.
[20] Plaintiff's exhibit L.
[21] Plaintiff's exhibit E, engineering drawings of G. Fred Liebkemann.

6

radius, the area of risk is reduced to 14". It is undisputed that Mr. Thompson was run over by a tire from the Hyster after he was struck in the right shoulder which knocked him face down to the ground. As noted above, Mr. Guidry testified that Mr. Thompson was 8-10 feet behind the Hyseter and Mr. Sherman testified that he was 10 feet behind the Hyster. Thus, if their testimony is relied upon, and considering the Hyster 360's tail-swing, it seems implausible to this court that the Hyster was moving forward. Thus, we find that Plaintiff has submitted sufficient summary judgment evidence to create a genuine issue of material fact for trial.

*Alternative design*

Under Louisiana law, a plaintiff has the burden to prove that the product is unreasonably dangerous in design. A plaintiff must prove that at the time the product left the manufacturer's control,

> (1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and
> (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.[22]

Hyster maintains that Mr. Thompson has failed to provide a reasonable alternative design. Mr. Thompson disputes this with the manufacturer's instructions which indicate that the backup alarm was to be installed outside of the internal compartment where it can produce an

---

[22] LA. STAT. ANN. § 9:2800.56.

7

adequate warning. The court finds that Mr. Thompson has provided sufficient summary judgment evidence to create a genuine issue of material fact for trial.

*Unreasonably dangerous in construction or composition*

Hyster maintains that Mr. Thompson has failed to provide uncontroverted evidence that the product, the ECCO brand backup alarm, deviated in a material way from the manufacturer's specifications or performance standards for the product.[23] A mistake in the manufacturing process renders the product defective.[24] Hyster asserts that Plaintiff's expert concedes that the Hyster's backup alarm was installed in a location specified by the manufacturer, thus eliminating the manufacturing defect claim.[25] However, in his deposition, Mr. Liebkmann testified that the alarm was "located in an enclosure contrary to the instructions provided by the manufacturer of the alarm."[26] Hyster had its own in-house installation drawing which shows installation behind a rear lighting housing,[27] however, Mr. Thompson remarks that this drawing ignores the manufacturer's instructions. The in-house installation drawing is dated 2006 and references a backup alarm with a decibel range of 87 to112 unlike the ECCO backup alarm that was actually installed. Thus, Mr. Thompson argues that these instructions may not be applicable to the backup alarm because the ECCO model in question does not meet the specifications for the older manufacturer's instructions. Mr. Thompson further relies on the detailed installation instructions which provides that the unit be installed in a "mounting location at the rear of the vehicle that

---

[23] LA. STAT. ANN. § 9:2800.55.
[24] See Brocato v. DePuy Orthopaedics, Inc., 2015 U.S. Dist. LEXIS 23550, at *7 (E.D. La. Feb. 25, 2015).
[25] This remark by Hyster does not reference any evidence submitted. See Hyster memorandum in support, p. 23, R. #51-3.
[26] Defendant's exhibit 10, Liebkemann depo. p. 62, lns. 23-25.
[27] Plaintiff's exhibit I.

8

will provide protection from flying objects, debris, and foul weather conditions *while allowing unobstructed sound projection from the vehicle.*"[28] Plaintiff further provides photos of where the backup alarm was installed—behind a rear-light—clearly obstructed by the rear light itself.[29] The court finds that Mr. Thompson has presented sufficient summary judgment evidence to create a genuine issue of material fact for trial as to whether the backup alarm was defective in construction and/or design.

*Inadequate warning*

Mr. Thompson alleges that Hyster, the manufacturer of the forklift, failed to provide any warning to its distributor or the customer that the backup alarm would not produce the level of sound specified [and thereby would not provide the level of safety anticipated], which constitutes a failure to warn.

To demonstrate a failure-to-warn under the LPLA, a plaintiff must prove that a product has a potentially damage-causing characteristic and the manufacturer failed to use reasonable care to provide an adequate warning about that characteristic.[30] A product lacks adequate warnings "if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide adequate warning of such characteristic and its danger to users and handlers of the product."[31] A warning is not required when:

---

[28] Plaintiff's exhibit C, p. 1, ¶ 1.
[29] Plaintiff's exhibit D.
[30] See Stahl v. Novartis Pharms. Corp. 283 F.3d 254, 264 (5th Cir. 2002)(citing LA. STAT. ANN. § 9:2800.57(A)).

[31] See LA. STAT. ANN. § 9:2800.57(A).

9

> (1) The product is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product's characteristics;
> (2) The user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic.[32]

Hyster maintains that Plaintiff has failed to specifically identify the inadequate warning or how this warning proximately caused his injury. Mr. Thompson argues that because Hyster manufactured the forklift with a deficient backup alarm system for the anticipated work conditions and failed to provide any warning to its distributor or the customer that the backup alarm would not produce the level of sound specified, such action constitutes a failure to warn of a danger of which it was aware or should have been aware. In this case, however, the evidence shows that the Plaintiff and his fellow employees had complained to the employer about the backup signal not being loud enough. It is therefore clear that paragraph (2) above exempts the manufacturer from the requirement of a warning. Mr. Thompson's awareness of the condition makes a further warning unnecessary and the lack thereof irrelevant.

To the extent that Plaintiff may seek to rely upon failure to warn as a predicate to liability, summary judgment on this issue in favor of the Defendant will be granted and Plaintiff will be precluded from pursuing that issue at trial.

*Breach of express warranty*

To establish a breach of warranty claim, Mr. Thompson must prove that: (1) a material false representation was made; (2) Plaintiff relied upon the representation; and (3) harm resulted

---

[32] Id. § 9:2800.57 (B).

10

from that reliance. Under the LPLA, a product is unreasonably dangerous when it does not conform to an express warranty "made at any time by the manufacturer about the product if the express warranty has induced the claimant or another person or entity to use the product and the claimant's damage was proximately caused because the express warranty was untrue."[33] The LPLA defines an express warranty as:

> a representation, statement of alleged fact or promise about a product or its nature, material or workmanship that represents, affirms or promises that the product or its nature, material or workmanship possesses specified characteristics or qualities or will meet a specified level of performance. "Express warranty" does not mean a general opinion about or general praise of a product.[34]

To survive summary judgment, a plaintiff must provide evidence that would create a genuine issue of material fact that:

> (1) The manufacturer made an express warranty regarding the product, (2) the Plaintiff was induced to use the product because of that warranty, (3) the product failed to conform to that express warranty, and (4) the Plaintiff's damage was proximately caused because the express warranty was untrue.[35]

Hyster argues that Plaintiff does not provide the express warranty relied upon, and that he was not the user of the product when the injury occurred. Mr. Thompson maintains that Hyster sold a forklift which it claims had a certain performance ability in terms of a backup alarm with sound levels to prevent injury; the relevant forklift did not have the warranted level of sound

---

[33] LA. STAT. ANN. § 9:2800.58.
[34] Id. § 9:2800.53(6).
[35] Caboni v. Gen. Motors Corp., 398 F.3d 357, 360 (5th Cir. 2005).

11

output. Mr. Thompson asserts that he and other Bechtel employees relied upon those representations for protection and that harm resulted from the breach of the warranty.

Mr. Thompson argues that there are genuine issues of material fact as to (1) whether Hyster examined, tested, or even listened to the audible backup alarm during its quality control inspection before shipping the product to its distributor; (2) the working noise environment at the Cheniere Energy LNG liquification project for which the Hyster material handler was sold; (3) whether the placement of the backup alarm by Hyster rendered the backup alarm ineffective; (4) whether housing the backup alarm inside the Hyster rear lighting compartment rendered the range of the audible alarm less than required by industry standards; (5) whether housing the backup alarm inside the Hyster compartment defeated the intended purpose of the audible alarm as recommended by the alarm's manufacturer;[36] (6) whether Hyster's sound level specifications for the ECCO backup alarm constituted a warranty of performance that would meet the work environment needs of the Cheniere Energy LNG facility; (7) whether the Hyster installation drawing is applicable to the backup alarm in question; (8) whether Hyster, as an expert in industrial equipment manufacture, was aware or should have been aware that the audible backup alarm was improperly placed; (9) whether Hyster, given its expertise in the industry, knew or should have known that the placement of the audible backup alarm would mute its intended safety effectiveness and potentially endanger workers in the vicinity of the equipment; and (10) whether the Hyster 360 was moving in reverse or forward at the time of the injury.

---

[36] Plaintiff's exhibit C.

The court finds that plaintiff has presented sufficient summary judgment evidence to create a genuine issue of material fact for trial as to the breach of warranty claim.

*Hyster-Yale Materials Handling Inc. ("Hyster-Yale")*

Co-defendant, Hyster-Yale seeks to be dismissed from the instant lawsuit because it was not the manufacturer of the product.[37] Hyster-Yale asserts that it never designed, manufactured or sold lift trucks, and it never designed, manufactured or sold the subject Hyster 360. Thus, only a claim of corporate liability could be asserted against it and no such liability has been alleged.

In its complaint, Plaintiff alleges that Hyster-Yale is the manufacturer of the Hyster 360;[38] Hyster-Yale admitted that co-defendant, NACCO Materials Handling Group, Inc. designed, manufactured and sold powered industrial lift trucks, but denied that Hyster-Yale designed, manufactured and sold powered industrial lift trucks.[39] In its Corporate Disclosure Statement,[40] Hyster-Yale disclosed that it is the parent company of NACCO Material Handling Group, Inc.

Plaintiff has not addressed, argued or submitted any summary judgment evidence to dispute that Hyster-Yale, the parent company of NACCO, is not a manufacturer of the Hyster 360, nor has Plaintiff alleged or argued any theory of corporate liability. Accordingly, the motion will be granted dismissing Hyster-Yale with prejudice from the instant lawsuit.

---

[37] Citing Stahl, supra at 261 (5th Cir. 2002)(citing LA.STAT. ANN. § 9:2800.54(A)).
[38] Petitioner for Damages, ¶ X, R. #1-1.
[39] Answer, ¶ 10, R. #7.
[40] R. #9.

## CONCLUSION

For the reasons set forth above the motion for summary judgment will be granted to the extent that Hyster-Yale Materials Handling Inc. will be dismissed with prejudice; otherwise, the motion for summary judgment will be denied.

**THUS DONE AND SIGNED** in Alexandria, Louisiana on this 26th day of December, 2017.

*[signature]*
**JAMES T. TRIMBLE, JR.**
**UNITED STATES DISTRICT JUDGE**